UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TREY CIULLA-HALL,<br><br>          Plaintiff,<br><br>     v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION ("NCAA"),<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 25-cv-10271-DJC<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                     **February 7, 2025**

## I.   Introduction

This matter comes before the Court on the emergency motion for a Temporary Restraining Order ("TRO") and temporary injunction of Plaintiff, Trey Ciulla-Hall ("Ciulla-Hall"). D. 7. Pursuant to Fed. R. Civ. P. 65, Ciulla-Hall seeks to enjoin Defendant, National Collegiate Athletic Association ("NCAA"), to provide him with a waiver to its five-year eligibility requirement and allow him to participate in the Spring 2025 baseball season at the University of Maryland. For the reasons stated below, the Court DENIES Ciulla-Hall's motion, D. 7.

Ciulla-Hall filed his complaint on February 4, 2025, D. 1, and sought emergency relief that same day, D. 2. The source of the emergency is not any action by the NCAA, but instead the University of Maryland's February 7, 2025 deadline for class registration. D. 7; D. 8 at 1–2. On February 5, 2025, Ciulla-Hall amended his motion for injunctive relief, D. 7, and his attorney,

1

Christopher Markey, submitted a supporting affidavit.  D. 9.  On February 6, 2025, Ciulla-Hall filed a notice of service of process to the NCAA.  D. 10.  Given the nature of the TRO, the Court ordered the NCAA to file its response by close of business the same day.  D. 11.  The NCAA submitted an opposition, in which it opposed the motion for injunctive relief on the grounds that this Court does not yet have personal jurisdiction over it and that Ciulla-Hall has not satisfied the standard for injunctive relief.  D. 12.  Today, Ciulla-Hall filed a reply.  D. 13.  Also today, the NCAA submitted a sur-reply.  D. 14.

## II.     Standard of Review

"[A]llowance of a TRO, as with a preliminary injunction, is an extraordinary and drastic remedy that is never awarded as of right."  Allscripts Healthcare, LLC v. DR/Decision Res., LLC, 592 F. Supp. 3d 1, 3 (D. Mass. 2022) (internal citation and quotation marks omitted).  To obtain any form of preliminary injunctive relief, including a TRO, a plaintiff "must demonstrate:  1) a substantial likelihood of success on the merits, 2) a significant risk of irreparable harm if the injunction is withheld, 3) a favorable balance of hardships, and 4) a fit (or lack of friction) between the injunction and the public interest."  Chiang v. Skeirik, 529 F. Supp. 2d 166, 172 (D. Mass. 2007) (citing Nieves–Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)); see NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020).  The likelihood of success on the merits is the "critical" factor in the analysis.  Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (citations and internal quotation marks omitted).

## III.    Factual Background

The following facts are based upon the parties' filings and exhibits.  Ciulla-Hall attended Stonehill College in North Easton, Massachusetts, where he played NCAA Division II baseball as

a freshman, during the 2020–21 academic year. D. 1 ¶¶ 2, 20. That year, due to COVID-19, Stonehill's fall baseball season was cancelled, id. ¶ 22, and its spring baseball season offered "limited practice and game opportunities," id. ¶¶ 25–31. In the Spring 2021 season, Ciulla-Hall participated in twenty-one of the thirty-two baseball games Stonehill played. Id. ¶ 31. He alleges that his participation was limited by extra familial responsibilities and financial challenges resulting from his mother's serious illness. Id. ¶¶ 32–33. Ciulla-Hall has now been accepted to the University of Maryland, where he hopes to pursue a master's degree and play NCAA Division I baseball. Id. ¶¶ 2, 15. Ciulla-Hall alleges that he would opt to play Division I baseball for Maryland in part to financially benefit from the use of his name, image and likeness ("NIL"), id. ¶ 13, and suggests he will not attend the University of Maryland if he is not permitted to play baseball. D. 8 at 2–3. His deadline to enroll in classes for the Spring 2025 semester is today, February 7, 2025. D. 1 ¶ 1.

The NCAA Constitution and Bylaws govern Ciulla-Hall's participation in college sports. Id. ¶ 4. As relevant here, Bylaw 12.8.1 (Five-Year Rule) limits a student-athlete's participation in NCAA sports to five calendar years from when the student-athlete begins studying at a collegiate institution. Id. ¶ 6. Ciulla-Hall's participation on the University of Maryland's baseball team would exceed this five-year limit. Bylaw 14.4.3.7 of Division II provides that a student-athlete may be granted an additional season of competition "when, due to extenuating circumstances (per Bylaw 14.24.3.7.1.3), the student-athlete, while eligible, did not compete in more than three contests or dates of competition (whichever is applicable to that sport) or 30 percent (whichever number is greater) of the maximum permissible number of contests or dates of competition set forth in Bylaw 17." Id. ¶ 7. The NCAA also adopted a policy that extended eligibility by one

year for certain student-athletes whose 2020–21 seasons were impacted by COVID-19. D. 12-1 ¶ 12. According to this policy, student-athletes are only eligible for the waiver if they participated "in 50% or less of their sport's Bylaw 17 maximum contests/dates of competition during the 2020–21 season due to ongoing impact from COVID-19." Id. ¶ 13. For baseball, the 2020–21 Maximum was forty contests, meaning student-athletes whose teams participated in more than twenty contests were ineligible for the waiver. Id.

On or about November 12, 2024, the University of Maryland submitted a Competition/Petition waiver on Ciulla-Hall's behalf. D. 1 ¶ 42; D. 12 at 5.[1] The NCAA verbally denied this request on November 22, 2024, and on December 6, 2024, issued a written denial, explaining that Ciulla-Hall had not met the NCAA's legislative requirements for a waiver. D. 12 at 6. The denial noted that Ciulla-Hall was not entitled to the waiver because he participated in too many games, even considering the COVID-19 relief available for the 2020–21 academic year. D. 12 at 6. On December 13, 2024, Ciulla-Hall, through the University of Maryland, sought relief through the Student Athlete Reinstatement Committee ("SARC"). D. 12 at 6. On December 20, 2024, the SARC verbally denied the request, and on January 28, 2025, issued a written follow-up to its verbal decision. D. 1 ¶ 43; D. 12 at 6.

IV. **Discussion**

    A. <u>**There Has Been No Showing of a Likelihood of Success on the Merits**</u>

Assuming *arguendo* that the Court has personal jurisdiction over the NCAA, Ciulla-Hall

---

[1] Ciulla-Hall's complaint and the NCAA's opposition are inconsistent regarding the exact date Maryland submitted the waiver. Ciulla-Hall lists the date as November 12, 2024, D. 1 ¶ 42, and the NCAA's lists it as November 13, 2024, D. 12 at 5.

has failed to demonstrate a likelihood of success on the merits.[2]

As an initial matter, the Court is not convinced that the NCAA's denial of Ciulla-Hall's waiver is in violation of its own rules, regulations and bylaws. See D. 8 at 16–18. Stonehill's baseball team participated in thirty-two games in the Spring of 2021, D. 1 ¶ 31, twelve more than the NCAA's twenty game limit for baseball in the 2020–21 academic year, D. 12-1 ¶ 13. As Ciulla-Hall acknowledges, he exceeded this limit by playing in twenty-one games. D. 13 at 1 (noting that "[t]he Plaintiff exceed the arbitrary threshold of fifth percent (50%) COVID-19 participation restriction by one single game"). The Court's initial review of the NCAA's bylaws appears to suggest waivers are only available when the student-athlete has not participated in more competitions than the legislative maximum, see D. 1 ¶¶ 4–7; D. 12-1 at 2–10. Thus, Ciulla-Hall has not met his burden with respect to his claim that the NCAA acted arbitrarily and capriciously in denying his waiver. D. 8 at 16. Nor has he met this burden with respect to his parallel state law claims. See D. 8 at 16–18.

Ciulla-Hall has also not met his burden of showing a likelihood of success on the merits as to his antitrust claims. As he acknowledges, "antitrust claims are usually difficult, complex matters not easily amendable to early resolution." D. 8 at 14. This case is no different, as resolution of Ciulla-Hall's claims would require the Court to determine whether the application of the NCAA's eligibility restrictions to Ciulla-Hall constitutes an "undue" restraint upon trade under § 1 of the Sherman Act. Nat'l Collegiate Athletic Ass'n v. Alston, 594 U.S. 69, 81 (2021)

---

[2] The NCAA contends that Ciulla-Hall's motion should fail because he did not properly serve a summons and, therefore, the Court does not yet have personal jurisdiction over the NCAA. D. 12 at 3–4. The Court assumes, without deciding, such personal jurisdiction for the purposes of reaching the merits of the emergency motion and accepts the NCAA's limited appearance in this case for the purpose of opposing the emergency motion. D. 12 at 2 n.1.

(observing that "the phrase 'restraint of trade' is best read to mean 'undue restraint'" (quoting Ohio v. American Express Co., 585 U.S. 529, 540 (2018))). This "manner of analysis generally requires a court to conduct a fact-specific assessment of market power and market structure to assess a challenged restraint's actual effect on competition." Id. (internal citation and quotation marks omitted). The Court presently lacks the factual record necessary to perform such an analysis. As the NCAA observes, at this stage, Ciulla-Hall has not even pointed to evidence demonstrating that the application of the Division II rules to his circumstances reflect "harm to market-wide competition in a well-defined antitrust product market." D. 12 at 7; see Sterling Merchandising, Inc. v. Nestle, S.A., 656 F.3d 112, 122 (1st Cir. 2011) (noting that "[i]t is axiomatic that antitrust laws are concerned with protecting against impairments to a market's competitiveness and not impairments to any one market actor"). Nor has Ciulla-Hall demonstrated a substantial likelihood of success on his claim that NCAA restrictions constitute a *per se* violation of Section 1 of the Sherman Act when the Supreme Court has instead analyzed the NCAA's rules according to the rule of reason. Alston, 594 U.S. at 91–92 (observing that "courts should take care when assessing [NCAA rules], sensitive to their procompetitive possibilities" because the rules are "essential if the product is to be available"); see id. at 106–07 (cautioning judges reviewing NCAA rules "that caution is key" and that, before entering injunctions, they "should . . . be wary" of overly intruding on "complex business arrangements").

The Court is not unsympathetic to Ciulla Hall's situation, and notes that the denial of injunctive relief does not reflect any assessment of the plausibility of his claims.[3] Nevertheless,

---

[3] The Court is cognizant that the United States District Court for the Western District of Wisconsin recently granted a preliminary injunction enjoining the NCAA, on antitrust grounds, from enforcing the Five-Year Rule against a plaintiff, absent "a more meaningful demonstration

on an undeveloped record, and under emergency circumstances that are not of the NCAA's making, and in fact, appear at least in part attributable to Ciulla-Hall's delay in seeking injunctive relief, Ciulla-Hall has not met the burden for injunctive relief.

As Ciulla-Hall cannot demonstrate a likelihood of success on his claims, the Court need not reach the remaining factors required for preliminary injunctive relief. See Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 46 (1st Cir. 2005) (expressing that "[t]he sine qua non of this four-part inquiry is likelihood of success on the merits:  if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity" (citation and internal quotation marks omitted)).

### V.    Conclusion

For the foregoing reasons, the Court DENIES Ciulla-Hall's emergency motion for a temporary restraining order, D. 7.[4]

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

that exceptions to that rule should not apply to plaintiff's . . . unique circumstances" surrounding a season of his participation.   D. 13-1 at 1–18.   Such ruling, however, does not warrant a different outcome here on the present record.   D. 14 at 2-3.

[4] In light of the ruling denying Cuilla-Hall's amended motion, D. 7, the Court DENIES the original motion, D. 2, as moot.